OPINION OF THE COURT
Nat H. Hentel, J.
Defendant was convicted on November 1,1980, by a jury for criminal possession of marihuana in the first degree. He now moves pursuant to CPL 330.30, 330.40, and 330.50 to set aside the verdict upon the ground that a deliberating juror had been replaced by an alternate juror in the midst of the jury’s deliberations, when such replacement was not in conformity with CPL 270.35. Defendant contends that he did not give his consent in open court, nor did he execute a writing evidencing such consent in the presence of the court which, therefore, requires the verdict to be vacated as a matter of law. A brief review of the events at trial follows.
On October 27,1980, 56 prospective jurors were sworn as to their qualifications. Six trial jurors were selected on that date and sworn as trial jurors. Six additional trial jurors and two alternate jurors were selected and sworn on October 28, 1980. Three witnesses for the People and one witness for the defendant were called on October 29 and 30, 1980, after which both sides rested and made their summations.
*395 The court rendered a one-hour and seven-minute charge on October 31, 1980, after which the jury commenced deliberation at 11:06 a.m. Various requests for information were received by the court and at 2:30 p.m., the jury was returned to court for a readback of testimony. At 3:22 p.m., the court recharged the jury on the four elements of the crime involved, after which the jury returned to its deliberations.
At 6:07 p.m., the jury was sent to dinner and returned at 7:30 p.m. to continue deliberations. At 9:47 p.m., the jury was returned to the courtroom where the foreman announced that the jury was deadlocked. The minutes of what occurred at that time are quoted hereafter:
“the court: All right, the jury has been returned to the courtroom at 9:47 p.m. in response to what is now marked Court Exhibit 8, received by the Court at 9:33 p.m. The note signed by the Foreman states the jurors are deadlocked.
“mr. clark (Foreman of the Jury), I am going to ask you at this time, because actually you’ve been deliberating about eight hours with time out for lunch and dinner.
“There is no agreement on a verdict at this time, Mr. Clark?
“mr. clark: There is no agreement. I won’t tell you the numbers involved.
“the court: No.
“mr. clark: But there is no hope. There is no hope even after sequester (sic) even after we’ve had a night’s rest, we all feel there is no hope that there will be a change; that there will still be a deadlock.
“the court: Well, I think that you’ve been here since 9:30 [a.m.]. It’s some twelve hours all told that you have been here. After a trial of this length, selection of jury and the presentation of evidence, I have to exercise my discretion as a Judge in this matter. I don’t think it would be unreasonable of me to ask you to try once again to arrive at an agreement, but what I’m going to do now is close the proceedings for the day. I’m going to ask our Court Officers to escort you to a place where you can get some rest * * * *396 You can get back here about 11:00 o’clock tomorrow morning. At that time I will recharge you with respect to your duties to deliberate, and then I will ask you to continue your deliberations for a reasonable length of time. It will not be my intention to hold you forever, but I think that it’s worth another try, and we will try it. At least the Court can’t be faulted for trying that and charging you again. So we will now adjourn at this hour, ten minutes of ten, and have a good night’s rest, and be in good health — you in particular, Mrs. Reese.
“mrs. reese: I feel terrible. Is there any way I can be excused?
“the court: You feel very badly?
“mrs. reese: I’ve been coughing and everything.
“the court: Mr. Winnemore [Assistant District Attorney] Mr. Cervini [defense counsel], would you have any objection if I excused Mrs. Reese and we’ll have one of the alternates take her place in the morning?
“mr. cervini: No. objection.*
“mr. winnemore: No objection.
“the court: All right, Mrs. Reese, I thank you very much, and you have performed beyond the call of duty, but I had inquired, and I know you had the desire to stay with it, but we’re going to excuse you now with thanks, and we do hope you feel better. We’ll send you home by cab.
“mrs. reese: I have my car, if someone goes over with me.
“the court: Yes, one of the Court Officers will escort you to your car, and I hope that you will indeed be well *** [off record discussion]
“the court: Now, Juror ‘A’, that would be Mr. Tatevossian, you will now take the place of Mrs. Reese as Juror #11 *** All right, the rest of you, good night and have a *397 good night’s rest. Put the case out of your minds tonight. Don’t discuss it any further. [Whereupon, the jury left the courtroom.] [off record discussion]
“the court: At 10:00 o’clock p.m., there being nothing further, the Court is adjourned until 11:00 a.m. tomorrow morning.”
Thus, at 10:00 p.m., on October 31, 1980, the jury was sequestered and sent to a hotel for the evening.
On November 1, 1980, the jury with alternate juror “A” now deliberating in place of Mrs. Reese, commenced deliberations at 10:45 a.m. The jury was returned to the courtroom at 11:34 a.m., when the court rendered a “modified Allen charge” to the deadlocked jury, and also recharged on circumstantial evidence. The jury returned to its deliberations at 11:50 a.m., and at 2:35 p.m., the jury announced that it had arrived at a verdict after 12 hours of deliberation — 8 hours on October 31, and 4 hours on November 1, 1980. The verdict of guilty was unanimous, and a date for sentencing was set by the court. On the date set for sentencing, this motion to set aside the verdict was made. Defense counsel argued in support of the motion in the following vein: “Defendant never orally nor in writing consented to such substitution personally but that he passively accepted the decision of his counsel to allow the substitution.”
Therefore, defense counsel relies on People v Ryan (19 NY2d 100) which forbids the substitution of an alternate juror after the jury has retired to deliberate absent the statutorily prescribed consent. Defense counsel claims that such consent can only be made by defendant in writing, and signed personally by him in open court in the presence of the court.
Thus, the issue raised by these pleadings poses this question: does the stipulation made on the record in court, where both parties through their counsel agree to the substitution of an alternate juror, and while defendant is also present, satisfy the tenor of the consent requirement enunciated in CPL 270.35? This section reads as follows: “§ 270.35. Trial jury; discharge of juror; replacement by alternate juror. If at any time after the trial jury has been sworn *398 and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity, or for any other reason is unavailable for continued service *** the court must discharge such juror. If an alternate juror or jurors are available for service, the court must order that the discharged juror be replaced by the alternate juror whose name was first drawn and called, provided, however, that if the trial jury has begun its deliberations, the defendant must consent to such replacement. Such consent must be in writing and must be signed by the defendant in person in open court in the presence of the court. If no alternate juror is available, the court must declare a mistrial pursuant to subdivision three of section 280.10.” (Emphasis supplied.)
It is to be noted that the emphasized portion of CPL 270.35 is derived from the Court of Appeals decision in People v Ryan (supra). In that case, substitution of an alternate juror was made with the consent of defendant’s counsel, but the defendant himself was not present at the time, nor was he consulted. The Court of Appeals held that although substitution of jurors prior to the submission of the case to the jury is constitutionally authorized, the New York Constitution prohibits substitution after the jury has begun its deliberation. The Court of Appeals suggested that a written instrument signed by the defendant in person, in open court, would have constituted sufficient authority for the substitution of the alternate juror in the midst of jury deliberation. Thus, the consent given by defendant’s attorney in the Ryan case did not satisfy the constitutional requirements for waiver. The language of CPL 270.35 seeks to carry out the “suggestion” of the Ryan opinion.
The clear import of CPL 270.35 is to protect the defendant from waiving a regular juror without his personal consent. Obviously, the rights of a defendant under section 2 of article I of the New York Constitution are to be zealously guarded even to the extent of preventing defendant’s attorney from consenting to such substitution without defendant’s personal consent in writing.
In the instant case, it appears from the record of proceedings that there had been compliance with the tenor of this *399 protective statute. Despite this court’s feeling that the tenor and purpose of the statute in question has, in fact, been complied with, and that this case is thus distinguishable from Ryan (supra), nevertheless the clear and specific command of the statute has not been complied with under these circumstances. This command was overlooked by the court, and apparently by both counsel, at a point late at night when all in the courtroom were tired and not functioning at the peak of mental alertness.
The statutory and mandatory command of CPL 270.35 required defendant’s consent to the substitution of the alternate juror to be in writing once the jury had commenced its deliberations. This was not done although the substitution was effected in the presence of defendant in open court and consented to on the record by his defense counsel.
At the oral argument of this motion, defense counsel stated that his consent on behalf of his client was not made after due consultation with or explanation of the law to his client. Thus, the latter could not make a knowledgeable consent to the substitution after the full implication of what such a consent might have on the outcome of a trial where the jury had been deadlocked after eight, hours of deliberations. The effect that a new juror might have on the other 11 jurors struggling in deadlock could not be assessed or measured without more than fleeting consideration or momentary consent. Would the new juror now become a catalytic agent to throw the jury to one side or the other for conviction or acquittal?
Judge Keating writing for the Court of Appeals in People v Ryan (supra, pp 103-105) stated:
“After the case was submitted to the jury the alternate juror was kept separate and apart from the 12 jurors who were engaged in discussing the evidence and deliberating the verdict. It was only after some five hours of deliberations, when one of the regular jurors was excused, that the alternate juror was permitted to enter the jury room and take part in the discussions. During that five-hour period the alternate ‘cease[d] to function as a juror.’
*400 “As a result, the defendants argue, the ‘alternate juror entered the jury room after the eleven original jurors had sifted the evidence and, in all probability, already formulated their preliminary positions. Most important of all, each of the eleven jurors was aware of the outlooks and positions of the others on the questions presented by the case, and sufficient time had elapsed so that surely tfye interplay of influences among and between the jurors had come into operation * * * [I]f deliberations had progresséd to a stage where the original eleven were in substantial agreement, they were in a position to present a formidable obstacle to the alternate juror’s attempts to persuade and convince the eleven remaining original jurors.’ ***
“ ‘[I]t is believed that an alternate juror who enters the jury room after deliberation has begun is not fully qualified to render an intelligent verdict, having missed part of the discussion and consideration which makes up the deliberative process.’ ***
“[W]e believe that, once the deliberative process has begun, it should not be disturbed by the substitution of one or more jurors who had not taken part in the previous deliberation and who had ‘cease[d] to function as’ jurors.”
The court notes that the waiver of a jury trial must be made by the defendant in writing, signed by the defendant and the defense counsel, and acknowledged in open court after the Trial Judge had determined whether such waiver was intelligently and knowledgeably made. This is to demonstrate that there has been a considered consent after defendant’s constitutional rights had been fully explained and understood.
Defense counsel asks whether the substitution of an alternate juror after the jury has been deliberating at some length, and is deadlocked, can be accomplished with less formality or care than required for waiver of a jury trial.
Although this court is reluctant to abort a completed trial after the rendering of a jury verdict, it is obvious that the statute in issue answers defense counsel’s above question in the negative.
*401 Accordingly, the motion to set aside the verdict is granted, and a new trial of defendant under the indictment is ordered to commence on April 20, 1981.

 Note: This colloquy took place in open court, on the record with the defendant present as well. Defense counsel consulted with defendant in the presence of the court although this does not appear on the record.